**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CITICAPITAL TECHNOLOGY FINANCE, INC., formerly known as EAB Leasing Corp., a Pennsylvania corporation, and CITICAPITAL COMMERCIAL LEASING CORPORATION, formerly known as Associates Leasing, Inc., an Indiana corporation, predecessor in interest to real party in interest, GENERAL ELECTRIC CAPITAL CORPORATION,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>GRANT H. GOODMAN AND TERI B. GOODMAN, husband and wife,<br><br>　　　　Defendants. | No. CV 03-01587-PHX-JAT<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

On June 20, 21, and 28, the Court presided over the bench trial in this matter. In their complaint, Plaintiffs CitiCapital Technology Finance, Inc. ("CitiCapital Technology") and CitiCapital Commercial Leasing Corporation[1] ("CitiCapital Commercial") asserted that Defendants Grant and Teri Goodman owed deficiencies due under eight lease agreements following the default of those lease agreements and the subsequent sale of the leased equipment. Plaintiffs seek liquidated damages and attorney's fees. Following the bench trial, the Court hereby finds and concludes as follows:

---

[1] General Electric Capital Corporation was substituted for CitiCapital Commercial Leasing Corporation upon written motion of its counsel.

I. **FINDINGS OF FACT**

1. Plaintiff CitiCapital Technology is incorporated in Pennsylvania and has its principal place of business in New York. Plaintiff General Electric Capital Corporation ("GE") is incorporated in Delaware and has its principal place of business in Connecticut. Defendants Grant and Teri Goodman are both residents and citizens of Arizona.

2. Under an agreement designated as Lease No. 005-0515121-000 ("Lease No. 121"), executed by GTI Capital Holdings, L.L.C., dba Rockland Materials ("GTI"), and thereafter executed by U.S. Bancorp Leasing and Financial ("USB"), USB financed GTI's acquisition of certain equipment in exchange for GTI's promise to make sixty monthly payments in the amount of $3,503.18.

3. Under an agreement designated as Lease No. 005-0515122-000 ("Lease No. 122"), executed by GTI, and thereafter executed by USB, USB financed GTI's acquisition of certain equipment in exchange for GTI's promise to make thirty-six monthly payments in the amount of $3,550.14.

4. Under Lease Nos. 121 and 122, GTI agreed to lease from USB the following described personal property:

| LEASE NO. | LEASED EQUIPMENT DESCRIPTION | VEHICLE IDENTIFICATION # |
|---|---|---|
| 121 | Four (4) 2001 Benson 27' Aluminum Dump Trailers | 5DMDSABD01M000216<br>5DMDSABD21M000217<br>5DMDSABD41M000218<br>5DMDSABD61M000219 |
| 122 | Four (4) 1996 Kenworth T800 Tractors | 1XKDDE9X2TJ723029<br>1XKDDE9X0TJ723031<br>1XKDDE9XXTJ723473<br>1XKDDE9X1TJ723474 |

5. Defendant Grant Goodman, a principal and member of GTI, guaranteed Lease Nos. 121 and 122 (the "Grant Goodman Guaranty of Lease Nos. 121 and 122"). By executing said guaranty, Defendant Grant Goodman guaranteed all payments,

1          charges, and obligations due under Lease Nos. 121 and 122.

2    6.    USB assigned Lease No. 121, the Lease No. 121 equipment, and the Grant Goodman Guaranty of Lease No. 121 to CitiCapital Technology. CitiCapital Technology is the owner and holder of Lease No. 121, the Lease No. 121 equipment, and the Grant Goodman Guaranty of Lease No. 121.

3    7.    USB assigned Lease No. 122, the Lease No. 122 equipment, and the Grant Goodman Guaranty of Lease No. 122 to CitiCapital Technology. CitiCapital Technology is the owner and holder of Lease No. 122, the Lease No. 122 equipment, and the Grant Goodman Guaranty of Lease No. 122.

4    8.    Lease Nos. 121 and 122 went into default for the failure to pay monthly rent due in April, 2003. Lease Nos. 121 and 122 remain in default.

5    9.    Pursuant to the terms of Lease Nos. 121 and 122, upon default CitiCapital Technology is entitled to immediate possession of the equipment included in Lease Nos. 121 and 122 and is entitled to sell or otherwise dispose of it. CitiCapital Technology is also entitled to apply the proceeds of any such disposition to the indebtedness of GTI to CitiCapital Technology.

6    10.   In the case of *In re: GTI Capital Holdings, L.L.C./G.H. Goodman Investment Companies, L.L.C.*, pending in the United States Bankruptcy Court for the District of Arizona, Case Nos. 2-03-07923 through 2-03-7924 (the "GTI bankruptcy case"), the court entered an Order that authorized CitiCapital Technology's recovery of the equipment included in Lease Nos. 121 and 122. After repossessing the equipment, CitiCapital Technology provided notice to all parties of the sale of the Lease No. 121 and the Lease No. 122 equipment.

7    11.   CitiCapital Technology and Nationwide Auction entered into an agreement in which Nationwide Auction agreed to assist in the sale of CitiCapital Technology's repossessed equipment. Pursuant to this agreement, Nationwide Auction provided a site on which to hold the public auction sales and also

assisted in marketing the sales.

12. In order to hold a successful public auction sale, CitiCapital Technology, in conjunction with Nationwide Auction, marketed the equipment included in Lease Nos. 121 and 122. At least ten days prior to the sale, they sent out 5,000 to 10,000 brochures, which listed the inventory being sold at the upcoming sale. At least two weeks prior to the sale, they provided Internet access to information about equipment being sold and also sent e-mails to 35,000-50,000 target customers. Additionally, at least two weeks prior to the sale, they advertised the sale in a publication known as "Truck Paper," which has a nationwide circulation of 700,000 people. Also, Roger Doyle, an employee of CitiCapital Technology, called 50-100 potential buyers to notify them of the upcoming sale.

13. After extensive marketing of the Lease No. 121 equipment, one 2001 Benson 27' Aluminum Dump Trailer was sold at public auction in Ontario, California, a recognized market for the sale of construction equipment. The balance of the Lease No. 121 equipment was sold by private sale. The date and gross amount received from said sales is set forth below:

| LEASED EQUIPMENT DESCRIPTION | VEHICLE IDENTIFICATION # | SALE PRICE AND DATE |
| --- | --- | --- |
| One (1) 2001 Benson 27' Aluminum Dump Trailer | 5DMDSABD01M000216 | $21,000 2/23/04 |
| One (1) 2001 Benson 27' Aluminum Dump Trailer | 5DMDSABD21M000217 | $21,000 2/23/04 |
| One (1) 2001 Benson 27' Aluminum Dump Trailer | 5DMDSABD41M000218 | $21,000 2/23/04 |
| One (1) 2001 Benson 27' Aluminum Dump Trailer | 5DMDSABD61M000219 | $12,500 2/23/04 |

14. After extensive marketing of the Lease No. 122 equipment, it was sold at public auction in Ontario, California. The date and gross amount received from the public auction is set forth below:

- 4 -

| LEASED EQUIPMENT DESCRIPTION | VEHICLE IDENTIFICATION # | SALE PRICE AND DATE |
|---|---|---|
| One (1) 1996 Kenworth T800 Tractor | 1XKDDE9X2TJ723029 | $11,500 2/10/04 |
| One (1) 1996 Kenworth T800 Tractor | 1XKDDE9X0TJ723031 | $5,750 2/10/04 |
| One (1) 1996 Kenworth T800 Tractor | 1XKDDE9XXTJ723473 | $5,500 2/10/04 |
| One (1) 1996 Kenworth T800 Tractor | 1XKDDE9X1TJ723474 | $6,500 2/10/04 |

15. CitiCapital Technology properly calculated its damages under the express provisions of Lease Nos. 121 and 122. It properly discounted future rents to present value. Additionally, it properly credited all payments made and properly credited all net sale proceeds from the disposition of the equipment included in Lease Nos. 121 and 122.

16. Under the express provisions of Lease Nos. 121 and 122, GTI agreed to pay CitiCapital Technology its reasonable attorney's fees, as well as all other expenses incurred by CitiCapital Technology in connection with the enforcement of any of its remedies.

17. Under an agreement designated as Lease No. 005-0515468-000 ("Lease No. 468"), executed by GTI, and thereafter executed by CitiCapital Technology, CitiCapital Technology financed GTI's acquisition of certain equipment in exchange for GTI's promise to make sixty monthly payments in the amount of $5,079.68.

18. Under an agreement designated as Lease No. 005-0515548-000 ("Lease No. 548"), executed by GTI, and thereafter executed by CitiCapital Technology, CitiCapital Technology financed GTI's acquisition of certain equipment in exchange for GTI's promise to make fifty-four monthly payments in the amount

- 5 -

1       of $2,120.00.

2  19.  Defendant Grant Goodman guarantied Lease Nos. 468 and 548 (the "Grant Goodman Guaranty of Lease Nos. 468 and 548"). By executing said guaranty, Defendant Grant Goodman guarantied all payments, charges, and obligations due under Lease Nos. 468 and 548.

20.  Under Lease Nos. 468 and 548, GTI agreed to lease from CitiCapital Technology the following described personal property:

| LEASE NO. | LEASED EQUIPMENT DESCRIPTION | VEHICLE IDENTIFICATION # |
|---|---|---|
| 468 | Two (2) 2000 Peterbilt Trucks W/MTM<br>11 YD Bridgemaster V Mixer | INPAL00X1YD493161<br>W/58419-15606<br>INPAL00X3YD493162<br>W/57170-16029 |
| 548 | <u>Invoice #020969</u><br>One (1) Vince Hagan Model VH-10945P Free Standing Jet Pulse Dust Conveyor with baby-buggy style dust shroud, ducting and dust recycle system<br><br><u>Invoice #020970</u><br>One (1) 5" Fill Pipe in lieu of a 4" Fill Pipe as quoted Two (2) additional 5" Fill Pipes<br><br><u>Invoice #OR00821C1</u><br>One (1) Vince Hagan Model 3200BAL Elevated Silo with VH24SJP and 14" Screw Conveyor<br>One (1) Silo Work Platform Option | |

21.  Lease Nos. 468 and 548 went into default for the failure to pay the monthly rent due in April, 2003. Lease Nos. 468 and 548 remain in default.

22.  Pursuant to the terms of Lease Nos. 468 and 548, upon default CitiCapital Technology is entitled to immediate possession of the equipment included in Lease Nos. 468 and 548 and is entitled to sell or otherwise dispose of it. CitiCapital Technology is also entitled to apply the proceeds of any such disposition to the indebtedness of GTI to CitiCapital Technology.

23.  In the GTI bankruptcy case, the court entered an Order that authorized

- 6 -

CitiCapital Technology's recovery of the equipment included in Lease Nos. 468 and 548. After repossessing the equipment, CitiCapital Technology provided notice to all parties of the sale of the Lease No. 468 and the Lease No. 548 equipment.

24. In order to hold a successful public auction sale, CitiCapital Technology, in conjunction with Nationwide Auction, marketed the equipment included in Lease Nos. 468 and 548. At least ten days prior to the sale, they sent out 5,000 to 10,000 brochures, which listed the inventory being sold at the upcoming sale. At least two weeks prior to the sale, they provided Internet access to information about equipment being sold and also sent e-mails to 35,000-50,000 target customers. Additionally, at least two weeks prior to the sale, they advertised in a publication known as "Truck Paper," which has a nationwide circulation of 700,000 people. Also, Roger Doyle, an employee of CitiCapital Technology, called 50-100 potential buyers to notify them of the upcoming sale.

25. After extensive marketing of the Lease No. 468 equipment, it was sold at public auction in Ontario, California. The date and gross amount received from the public auction is set forth below.

| LEASED EQUIPMENT DESCRIPTION | VEHICLE IDENTIFICATION # | SALE PRICE AND DATE |
| --- | --- | --- |
| One (1) 2000 Peterbilt Truck W/MTM 11 YD Bridgemaster V Mixer | INPAL00X1YD493161 W/58419-15606 | $58,500 2/10/04 |
| One (1) 2000 Peterbilt Truck W/MTM 11 YD Bridgemaster V Mixer | INPAL00X3YD493162 W/57170-16029 | $60,000 2/10/04 |

26. The Lease No. 548 equipment was sold by private sale. The date and gross amount received from the private sale is set forth below:

- 7 -

| LEASED EQUIPMENT DESCRIPTION | SALE PRICE AND DATE |
|---|---|
| Invoice #020969<br>One (1) Vince Hagan Model VH-10945P<br>Free Standing Jet Pulse Dust Conveyor<br>with baby-buggy style dust shroud,<br>ducting and dust recycle system | $29,500<br>10/20/04 |
| Invoice #020970<br>One (1) 5" Fill Pipe in lieu of a 4" Fill Pipe<br>as quoted Two (2) additional 5" Fill Pipes | |
| Invoice #OR00821C1<br>One (1) Vince Hagan Model 3200BAL<br>Elevated Silo with VH24SJP and 14"<br>Screw Conveyor<br>One (1) Silo Work Platform Option | |

27. CitiCapital Technology properly calculated its damages under the express provisions of Lease Nos. 468 and 548. It properly discounted future rents to present value. Additionally, it properly credited all payments made and properly credited all net sale proceeds from the disposition of the equipment included in Lease Nos. 468 and 548.

28. Under the express provisions of Lease Nos. 468 and 548, GTI agreed to pay CitiCapital Technology its reasonable attorney's fees, as well as all other expenses incurred by CitiCapital Technology in connection with the enforcement of any of its remedies.

29. Under an agreement designated as Lease No. 211-0106451-000 ("Lease No. 451"), executed by GTI, and thereafter executed by CitiCapital Commercial, CitiCapital Commercial financed GTI's acquisition of certain equipment in exchange for GTI's promise to make sixty monthly payments in the amount of $1,670.00.

30. Under an agreement designated as Lease No. 211-0106452-000 ("Lease No. 452"), executed by GTI, and thereafter executed by CitiCapital Commercial, CitiCapital Commercial financed GTI's acquisition of certain equipment in

exchange for GTI's promise to make sixty monthly payments in the amount of $3,188.00.

31. Under an agreement designated as Lease No. 211-0106453-000 ("Lease No. 453"), executed by GTI, and thereafter executed by CitiCapital Commercial, CitiCapital Commercial financed GTI's acquisition of certain equipment in exchange for GTI's promise to make sixty monthly payments in the amount of $1,670.00.

32. Under an agreement designated as Lease No. 211-0107004-000 ("Lease No. 7004"), executed by GTI, and thereafter executed by CitiCapital Commercial, CitiCapital Commercial financed GTI's acquisition of certain equipment in exchange for GTI's promise to make sixty monthly payments in the amount of $3,193.08.

33. Defendants Grant and Teri Goodman guarantied Lease Nos. 451, 452, 453, and 7004 (the "G and T Guaranties"). By executing said guaranties, Defendants Grant and Teri Goodman guaranteed all payments, charges, and obligations due under Lease Nos. 451, 452, 453, and 7004.

34. Under Lease Nos. 451, 452, 453, and 7004, GTI agreed to lease from CitiCapital Commercial the following described personal property:

| LEASE NO. | LEASED EQUIPMENT DESCRIPTION | VEHICLE IDENTIFICATION # |
|---|---|---|
| 451 | Two (2) 2002 Vantage P-41-1000 Pneumatic Tank Trailers | 4EPPA41252BBA4130 4EPPA41272BBA4131 |
| 452 | Two (2) 2002 Peterbilt 357 Conventional Tractors w/ Gardner Denver Blowers | 1XPAD09X32D574711 1XPAD09X52D574712 |
| 453 | Two (2) 2002 Vantage P-41-1000 Pneumatic Bulk Trailers | 4EPPA41292BBA4132 4EPPA41202BBA4133 |
| 7004 | Two (2) 2002 Peterbilt 357 Tractors w/ Gardner Denver Blowers | 1XPAD09X52D579196 1XPAD09X72D579197 |

35. Lease Nos. 451, 452, 453, and 7004 went into default for the failure to pay the

- 9 -

monthly rent due in April, 2003. Lease Nos. 451, 452, 453, and 7004 remain in default.

36. Pursuant to the terms of Lease Nos. 451, 452, 453, and 7004, upon default CitiCapital Commercial is entitled to immediate possession of the equipment included in Lease Nos. 451, 452, 453, and 7004 and is entitled to sell or otherwise dispose of it. CitiCapital Commercial is also entitled to apply the proceeds of any such disposition to the indebtedness of GTI to CitiCapital Commercial.

37. In the GTI bankruptcy case, the court entered an Order that authorized CitiCapital Commercial's recovery of the equipment included in Lease Nos. 451, 452, 453, and 7004. After repossessing the equipment, CitiCapital Commercial provided notice to all parties of the sale of the equipment included in Lease Nos. 451, 452, 453, and 7004.

38. CitiCapital Commercial and Nationwide Auction entered into an agreement in which Nationwide Auction agreed to assist in the sale of CitiCapital Commercial's repossessed equipment. Pursuant to this agreement, Nationwide Auction provided a site on which to hold the public auction sales and also assisted in marketing the sales.

39. In order to hold a successful public auction sale, CitiCapital Commercial, in conjunction with Nationwide Auction, marketed the equipment included in Lease Nos. 451, 452, 453, and 7004. At least ten days prior to the sale, they sent out 5,000 to 10,000 brochures, which listed the inventory being sold at the upcoming sale. At least two weeks prior to the sale, they provided Internet access to information about equipment being sold and also sent e-mails to 35,000-50,000 target customers. Additionally, at least two weeks prior to the sale, they advertised in a publication known as "Truck Paper," which has a nationwide circulation of 700,000 people.

40. After extensive marketing of the equipment included in Lease Nos. 451, 452, 453, and 7004, it was sold at public auction in Ontario, California. The date and gross amount received from the public auction sale(s) is set forth below:

| LEASE NO. | LEASED EQUIPMENT DESCRIPTION | VEHICLE IDENTIFICATION # | SALE PRICE AND DATE |
|---|---|---|---|
| 451 | One (1) 2002 Vantage P-41-1000 Pneumatic Tank Trailer | 4EPPA41252BBA4130 | $22,000 11/21/03 |
| 451 | One (1) 2002 Vantage P-41-1000 Pneumatic Tank Trailer | 4EPPA41272BBA4131 | $23,500 11/20/03 |
| 452 | One (1) 2002 Peterbilt 357 Conventional Tractor w/ Gardner Denver Blower | 1XPAD09X32D574711 | $58,500 11/21/03 |
| 452 | One (1) 2002 Peterbilt Conventional Tractor w/ Gardner Denver Blower | 1XPAD09X52D574712 | $51,000 11/24/03 |
| 453 | One (1) 2002 Vantage P-41-1000 Pneumatic Bulk Trailer | 4EPPA41292BBA4132 | $24,750 11/21/03 |
| 453 | One (1) 2002 Vantage P-41-1000 Pneumatic Bulk Trailer | 4EPPA41202BBA4133 | $25,500 11/20/03 |
| 7004 | One (1) 2002 Peterbilt 357 Tractor w/ Gardner Denver Blower | 1XPAD09X52D579196 | $51,000 11/21/03 |
| 7004 | One (1) 2002 Peterbilt 357 Tractor w/ Gardner Denver Blower | 1XPAD09X72D579197 | $51,000 11/21/03 |

41. CitiCapital Commercial assigned Lease Nos. 451, 452, 453, and 7004 (referred to as the "GE Leases") and the G and T Guaranties to GE. GE is the owner and holder of the GE Leases and the G and T Guaranties.

42. GE properly calculated its damages under the express provisions of the GE Leases. It properly calculated a final adjustment for each lease. Additionally, it properly credited all payments made and properly credited all net sale proceeds from the disposition of the equipment included in Lease Nos. 451, 452, 453, and 7004.

43. Under the express provisions of the GE Leases, GTI agreed to pay all reasonable attorney's fees as well as all other expenses incurred in connection with the enforcement of any of the remedies under the GE leases.

## II. CONCLUSIONS OF LAW

1. The basis for the Court's jurisdiction is diversity of citizenship pursuant to 28 U.S.C. §1332.

2. Where a contract provides damages provisions in the event of a breach, the Court will enforce the contract as written. *Green v. Snodgrass*, 289 P.2d 191, 193 (Ariz. 1955). These damages provisions generally control unless they are unconscionable. *See Davis v. AZ Boys Choir Soc.*, 669 P.2d 1005, 1010 (Ariz. App. 1983).

3. The test of whether a repossession sale is valid is whether every aspect of the disposition is commercially reasonable. A.R.S. § 47-2706. The determination of what is reasonable is generally a question of fact. *Gulf Homes, Inc. v. Goubeaux*, 602 P.2d 810, 812 (Ariz. 1979).

4. Unless otherwise agreed, sale may be at a public or private sale. Sale may be as a unit or in parcels and may be at any time and place and on any terms. A.R.S. § 47-2706.

5. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either: (1) sells the collateral in the usual manner in any recognized market, or (2) sells at the price current in such market at the time of his sale, or (3) otherwise sells in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner. A.R.S. § 47-9627.

- 12 -

### III. RESULT

The only issue in this case centers around the amount, if any, that Plaintiffs have been damaged. Because the parties included liquidated damages provisions in each of the lease agreements at issue, the Court will enforce these provisions. The Court previously stated in its September 27, 2005 Order that the liquidated damages provisions included in the lease agreements are not unconscionable. The Court also stated that "the amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss." *Pima Savings and Loan Association v. Rampello*, 812 P.2d 1115, 1118 (Ariz. App. 1991).

Plaintiffs properly followed the express provisions of the lease agreements upon default. Pursuant to the lease agreements, Plaintiffs repossessed the equipment and sold it by way of both public auction and private sale. Defendants argue that these sales were not executed in a commercially reasonable manner, but the Court disagrees. Plaintiffs, in conjunction with Nationwide Auction, engaged in extensive marketing of all of the repossessed equipment. Their marketing efforts, which included brochures, e-mails, Internet access to sale information, and personal phone calls to potential buyers, were reasonably calculated to notify potential buyers of the sale. Additionally, Plaintiffs sold the equipment in Ontario, California, which is a recognized market for the sale of construction equipment. Because Plaintiffs sold the repossessed equipment in a recognized market and in the usual manner, which included both public auction and private sale, their sales were executed in a commercially reasonable manner under A.R.S. § 47-9627.

Following the sale of each piece of equipment, Plaintiffs properly used the liquidated damages provisions in each lease agreement to calculate the deficiencies due under the agreements. Based on these calculations, CitiCapital Technology is entitled to judgment in its favor and against Defendant Grant Goodman as follows: (a) as to Lease No. 121, the amount of $51,213.80 plus interest at the rate of fifteen percent (15%) from April 23, 2005 through the date judgment is entered; (b) as to Lease No. 122, the amount of $5,178.14 plus

interest at the rate of fifteen percent (15%) from April 23, 2005 through the date judgment is entered; (c) as to Lease No. 468, the amount of $59,716.73 plus interest at the rate of ten percent (10%) from April 23, 2005 through the date judgment is entered; and (d) as to Lease No. 548, the amount of $25,801.26 plus interest at the rate of ten percent (10%) from April 23, 2005 through the date judgment is entered.

Additionally, GE is entitled to judgment in its favor and against Defendants Grant and Teri Goodman as follows: (a) as to Lease No. 451, the amount of $40,723.94 plus interest at the rate of ten percent (10%) from April 23, 2005 through the date judgment is entered; (b) as to Lease No. 452, the amount of $60,834.57 plus interest at the rate of ten percent (10%) from April 23, 2005 through the date judgment is entered; (c) as to Lease No. 453, the amount of $40,268.45 plus interest at the rate of ten percent (10%) from April 23, 2005 through the date judgment is entered; and (d) as to Lease No. 7004, the amount of $73,093.31 plus interest at the rate of ten percent (10%) from April 23, 2005 through the date judgment is entered.

### IV. JUDGMENT

Based on the foregoing,

**IT IS ORDERED** that the Clerk of the Court shall enter judgment in favor of CitiCapital Technology and against Defendant Grant Goodman in the amount of $56,391.94 plus interest to be calculated at a rate of 15% from April 23, 2005 through the date judgment is entered (following the entry of judgment, interest shall accrue at the applicable federal rate).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of CitiCapital Technology and against Defendant Grant Goodman in the amount of $85,517.99 plus interest to be calculated at a rate of 10% from April 23, 2005 through the date judgment is entered (following the entry of judgment, interest shall accrue at the applicable federal rate).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in

favor of GE and against Defendants Grant and Teri Goodman in the amount of $214,920.27 plus interest to be calculated at a rate of 10% from April 23, 2005 through the date judgment is entered (following the entry of judgment, interest shall accrue at the applicable federal rate).

DATED this 20th day of July, 2006.

_____
James A. Teilborg
United States District Judge